DAVID W. YOUNG *vs.* JOSEPH CANTZ.

MARTHA D. YOUNG *vs.* JOSEPH CANTZ.

AUGUST 27, 1956.

PRESENT: Flynn, C. J., Condon, Roberts, Andrews and Paolino, JJ.

ANDREWS, J. These two actions of trespass on the case for negligence, arising out of a collision between two automobiles, were brought respectively by a husband and wife. The husband was the owner and operator of the automobile in which his wife was riding, and the defendant was the owner and operator of the other automobile. In the superior court the cases were tried together to a jury which returned verdicts for the wife in the sum of $16,000 and for the husband in the sum of $8,000. The defendant filed a motion for a new trial in each case which was granted by the trial justice unless the plaintiff remitted $4,000 of the verdict in each case. The plaintiffs filed the remittiturs but the

defendant excepted to the denial of his motions for an unconditional new trial. This and another exception are the only ones now pressed and the rest of the thirty-seven exceptions being neither briefed nor argued are deemed to be waived.

The accident occurred October 21, 1952 at a signal light on Pawtucket avenue near the Providence-Pawtucket city line. The plaintiff's automobile, while stopped at the light, was struck from behind by defendant's car. The evidence will be discussed with the exceptions.

The first exception argued is to the trial court's refusal to pass the case when counsel for plaintiffs, in cross-examining defendant, asked him if he did not have "$50 or $100 deductible." In the absence of the jury and after a colloquy between court and counsel, the trial justice denied the motion saying that the reference was equivocal and did not necessarily refer to insurance. In our opinion the question was proper, in view of the apparent reluctance of defendant to state the damage to the front end of his automobile. This is shown from the following excerpt from the transcript:

"Q. How great was the damage to your car, Mr. Young?
A. Not very much.
Mr. Goldberg: Mr. Cantz, I am sorry.
The Witness: Not very much, sir. I do not know. I had my car financed at the time and they fixed it.
Q. Didn't you know how much the bill was?
A. No. I just brought the car and they told us—told me to take it to the garage and they'd fix it and the finance company would take care of the bill.
Q. Didn't you have $50 or $100 deductible?
A. Yes."

Counsel for the plaintiffs made this reference apparently in an attempt to refresh the recollection of the witness, since it would be natural to suppose that if he had had to pay $50 or $100 of the repair bill, he would remember the damage to his automobile. We also believe, with the trial justice, that the reference was equivocal. It certainly did

not refer to liability insurance. In any event it does not appear that counsel for the plaintiffs deliberately injected insurance into the case. We are satisfied that our rule on this subject was not violated. See *Huling* v. *Finn*, 67 R. I. 369, 376, and note in 4 A.L.R. 2d 819, §§22 and 23, and cases there cited. Exception numbered 25 in each case is overruled.

Since defendant does not question his liability there remains for our consideration only the question of whether the verdicts as reduced by the remittiturs are still excessive. That is the subject matter of exception 37 in each case. We shall first consider the verdict as reduced in the wife's case.

In his argument before us defendant seemed to contend strongly that the case was "trumped up" but the jury and trial justice took a different view and we think they were fully justified in so doing. The trial justice in denying the motion for a new trial in the wife's case stated that the plaintiff was "a very fine little character," and showed a disposition to minimize rather than to exaggerate her injuries.

It appeared from the evidence that she was knocked unconscious; that she did not know what happened until she got to the doctor's office; that following the accident she had a severe pain in her neck, and was "vomiting" and "very dizzy" for several months; and that it finally appeared that by reason of the injury to her head she lost the hearing in one ear. One of the doctors testified: "And my theory of this injury is a compression with tearing of some of the blood vessels in the meningo in the brain which gives her all this trouble." The plaintiff was in bed for weeks and did not leave the house until the following April. Although she was able to do most of her housework at the end of a year and a half, yet at the time of the trial, over three years after the accident, she was still unable to do some parts of it. For a long time she had to have continuous medical attention.

The trial justice, who fully performed his duty in con-

sidering and disposing of this motion for a new trial, stated with reference to plaintiff's injuries: "As to the injury to this woman's head and hearing, I am satisfied that upon the evidence here she suffered an intracranial lesion of some character and that that lesion has resulted in loss of hearing in her right ear, and that that loss is permanent, and that loss will for many years, perhaps throughout her entire life, require medical attention and that she will suffer pain, humiliation, following and resulting from this injury to her hearing." While we are of the opinion that $12,000 is ample compensation for the plaintiff wife, we cannot say that the verdict as reduced by the remittitur is grossly excessive. Therefore exception 37 in her case is overruled.

In the plaintiff husband's case, his personal injury was apparently slight as he was laid up for only one week. He testified, however, that because of his wife's illness and inability to do the housework, he had to spend considerable time at home doing it and taking care of his wife.

The plaintiff, who is a disabled veteran of World War I, conducted from his home a commission business in various items, such as blankets, sheets, *etc.* Apparently he would telephone to, or receive calls from, his customers and then, if he received an order, he would get it filled at the wholesale places and deliver it in his automobile. He testified that before the accident he averaged about $50 a week, but that because of the condition of his wife he lost from $15 to $25 a week for two and one half years.

He made no claim in his declaration for loss of income, but the defendant asked for the particulars on that item and the plaintiff furnished them. The defendant in this court directed his arguments against the character of the proof as to loss of profits to show an excessive verdict. However, the weakness in the plaintiff's case on this phase was that his loss of profits after the week he was laid up was not the proximate result of the accident. After that week he stayed at home more or less for the next two and one-half years to do the housework and take care of his

wife. He deliberately chose to act as housemaid and nurse-maid rather than as salesman. In these circumstances he cannot substitute loss of profits as the cost of such services. However, for taking care of his wife and doing the house-work he was entitled to be paid what it would reasonably cost to hire such work to be done, but he failed to offer any proof of that cost. The plaintiff also claimed that he would have to pay for future medical services for his wife but again he furnished no evidence as to what they would cost.

It would have been better practice for defendant to have asked the court to instruct the jury that there was no evidence on which they could base an award of damages for these items. The fact remains, however, that there was no such evidence and in our opinion the jury's verdict, even after it was reduced by the trial justice, reflects an award for these items. We think the verdict to that extent is without evidence to support it.

The medical bills were $655 and allowing the plaintiff $50 for the week he was laid up the total money loss would be $705. The jury of course could have allowed him something for his pain and suffering. On the whole after careful consideration we feel that the evidence did not warrant a verdict for the plaintiff husband in excess of $1,000.

In the case of David W. Young v. Joseph Cantz, the defendant's exception numbered 37 is sustained, his exception numbered 25 is overruled, and the case is remitted to the superior court for a new trial on the question of damages only unless the plaintiff shall, on or before September 10, 1956, file in the office of the clerk of that court a further remittitur of all of the verdict in excess of $1,000. If such remittitur is filed, the superior court is directed to enter judgment for the plaintiff for $1,000 on the verdict as reduced by the remittitur.

In the case of Martha D. Young v. Joseph Cantz, all of the defendant's exceptions are overruled, and the case is remitted to the superior court for entry of judgment for

the plaintiff for $12,000 on the verdict as reduced by the remittitur.

*William R. Goldberg,* for plaintiffs.

*Francis V. Reynolds, Richard P. McMahon,* for defendant.